IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TRUSTEES OF THE NATIONAL** | * |
| **ELECTRICAL BENEFIT FUND**, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *    Civil Action No. TDC-21-1806 |
| | * |
| **SEMPER UTILITIES, LLC.**, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*

## REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Motion for Default Judgment" filed by Trustees of the following: (a) National Electrical Benefit Fund ("NEBF"); and (b) National Electrical Annuity Plan ("NEAP") (collectively, "Plaintiffs"). (ECF No. 16).[1] Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, ("ERISA") to recover delinquent contributions and related relief Semper Utilities, LLC ("Defendant").

Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 17). I do not believe that a hearing necessary. L.R. 105.6. As set for the more fully below, I ultimately recommend that Plaintiffs' "Motion for Default Judgment" ("Motion") be **GRANTED**, and that damages be awarded as set for the herein.

---

[1] NEBF is a defined benefit plan, pursuant to 29 U.S.C. § 1002(35), and NEAP is a defined contribution plan, pursuant to 29 U.S.C. § 1002(34). (ECF No. 1). Both plans were established pursuant to trust agreements.(ECF No. 16-2, pp. 1, 24-31, 33-38).

I.      FACTUAL AND PROCEDURAL BACKGROUND

    A.      **Factual Background: The Agreements Related to Contributions to the Benefit Funds**

Plaintiffs are trustees and the authorized collection fiduciaries and agents of the NEBF and NEAP Funds (the "Benefit Funds"), which were established pursuant to trust agreements. (ECF No. 16-2). On December 28, 2018 and May 28, 2019, the Defendant signed Letters of Assent related to collective bargaining agreements between local chapters of the International Brotherhood of Electrical Workers Union (IBEW) and local chapters of the National Electrical Contractors Association (NECA). By signing the Letters of Assent, the Defendant agreed to be bound by the collective bargaining agreements and the NEBF and NEAP trust agreements. Specifically, the Defendant agreed to make monthly contributions to the Benefit Funds on behalf of its union member employees, as well as to submit monthly reports to NEBF and NEAP of the hours worked by those covered employees. (*Id.*).

The amounts of the monthly contributions to the Benefit Funds were based on the hours worked by the Defendant's employees. In particular, for the NEBF, contributions were to be paid "at the rate of 3% of the gross labor payroll paid to the bargaining unit members," and for NEAP, contributions were to be paid "at the rate of 25 % of the gross monthly payroll paid to bargaining members." (ECF No. 16-2, pp. 9-14, 17-22, 24-31). In order to help the Trustees track the contribution amounts due, the Defendant was required to provide reports to NEBF and NEAP by no later than the "15th day of the month following the month in which the covered work was performed." (ECF No. 16-2, pp. 9-14, 27-22, 33-28, 42-48). If the Defendant failed to timely submit contributions, the trust agreements for the Benefit Funds stipulated that various penalties applied. In particular, the Benefit Funds may collect the following based on the delinquent

contributions: interest at a rate of ten percent (10%) per annum; liquidated damages in the amount of twenty percent (20%), and audit fees and attorney's fees and costs incurred to collecting the delinquent amounts, which are termed "collections costs." (ECF No. 16-2, pp. 3, 30, 37).

### B. Procedural Background

On July 21, 2021, Plaintiffs filed a Complaint against the Defendants alleging breach of the collective bargaining agreements and the trust agreements establishing the Benefit Funds. Plaintiffs are seeking to collect unpaid contributions allegedly owed to the Benefit Funds, as well as liquidated damages, accrued interest, court costs, and the award of reasonable attorney's fees. (ECF No. 1, pp. 7-8). Plaintiffs also seek an order directing the Defendant to file payroll reporting forms for the Benefit Plans for the period of January 2021-present. (*Id.*, p. 7).

An Affidavit completed by a private process server describes that on August 2, 2021, the Defendant was served with the Complaint. (ECF No. 9). The executed summons was returned and filed with the Court on August 31, 2021. (ECF Nos. 5, 8, 9). Defendant failed to file a responsive pleading within the 21-day period provided by the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which was August 23, 2021. On August 31, 2021, Plaintiffs filed a notice requesting leave to file a "Motion for Entry of Default Judgment." (ECF No. 11). Judge Chuang granted the Plaintiffs leave to file the same. (ECF No. 12).

On August 31, 2021, Plaintiffs filed a "Motion for Clerk Entry for Default," which had an affidavit in support thereto. (ECF No. 10). On September 1, 2021, the Clerk of the Court entered default against the Defendant. (ECF Nos. 13, 14). On September 29, 2021, Plaintiffs filed the Motion. (ECF No. 16). In support of the Motion, Plaintiffs appended the following documents: (a) an "Affidavit of Total Amount Due Plaintiffs" authored by Brian Killian; (b) Letters of Assent; (c) the trust agreements establishing the Benefit Funds; (d) collective bargaining agreements; (e)

delinquency reports related to the Benefit Funds; and (f) a declaration and documents from Jennifer Bush Hawkins, Esq., regarding attorney's fees and costs. (ECF No. 16-2, pp. 1-52). In addition to seeking damages, Plaintiffs request that the Court order Defendant to file "payroll reports for the months of December 2020 to the present." (ECF No. 16, p. 2).

## II.     DISCUSSION

### A.     Default Judgment

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

More than six months have passed since the Defendant received the Complaint. (ECF No. 9). The Defendant has neither filed an opposition nor otherwise defended against this case. Plaintiffs filed an affidavit of service of the Complaint upon a representative authorized to accept it. (*Id.*). Therefore, I find that Defendant has been available to respond or defend against this case, yet has failed to do so. Thus, I recommend that default judgment be entered.

B.  **Damages**

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6). "With respect to a default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011). If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No.6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding no evidentiary hearing on damages needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required."). The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

*1. Contributions*

Plaintiffs assert that the Defendant is delinquent in making contributions for the following periods: (a) January 2020 through November 2020, for the NEBF Fund;[2] and (b) May 2020 for the NEAP Fund.[3] (ECF No. 16-2).

I find that the applicable ERISA provisions and the trust agreements establishing the Benefit Funds, Letters of Assent, and collective bargaining agreements required the Defendant to have made timely contributions. 29 U.S.C. § 1145 of ERISA requires that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

I find that the Plaintiffs are considered multi-employer plans. *See* 29 U.S.C. § 1002 (2). The record demonstrates that the Defendant, through its agent/representative, Sotero Diaz, is a party to the Letters of Assent related to the trust agreements and collective bargaining agreements governing the Benefit Funds. (ECF No. 16-2, pp. 7, 40). By signing the Letters of Assent, the Defendant accepted the terms of the trust and collective bargaining agreements. I further find that documents governing the Benefit Funds obligated the Defendants to make contributions based upon payroll generated for each covered employee. (ECF No. 16-2, pp. 1-3).

In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action. *See* 29 U.S.C. § 1132. If a plaintiff prevails in its action, a district court is then required to award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3)

---

[2] The NEBF Trustees claim that additional contribution amounts are due for the period of December 2020 to the present, but because the Defendant has "failed to and refused to submit its required payroll reporting forms," NEBF is unable to determine the amounts due for that period. (ECF No. 16-2, p. 3).
[3] The NEAP Trustees claim that additional contribution amounts are due for the period of December 2020 to the present, but because the Defendant has "failed to and refused to submit its required payroll reporting forms," NEBF is unable to determine the amounts due for that period. (ECF No. 16-2, p. 3).

liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

The Supreme Court has explained that a plan's ability to bring forth legal action as "an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). In interpreting a collection action arising under 29 U.S.C. § 1145, the Fourth Circuit has reasoned that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents," because this "puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). I find that Plaintiffs have the right to collect unpaid contributions from the Defendant.

### 2. Specific Recovery Sought

As permitted by 29 U.S.C. § 1132(g), Plaintiffs seek the following for the NEBF Fund: (1) $13,416.28 for delinquent contributions; (2) $2,683.25 in liquidated damages, which is based on the amount of 20% of the contributions due and owing; (3) $767.50 in accrued interest (computed by considering the delinquent contributions and imposing 10% interest per year); $279.13 in costs, and $1,511.10 in attorneys' fees. (ECF Nos. 16-1, pp. 1-5; 16-2). In addition, Plaintiffs seek the following for the NEAP Fund: (1) $241.08 for delinquent contributions; (2) $48.22 in liquidated damages, which is based on the amount of 20% of the contributions due and owing; (3) $23.03 in accrued interest (computed by considering the delinquent contributions and imposing 10% interest per year); $279.13 in costs, and $1,511.10 in attorneys' fees. (ECF Nos. 16-1, pp. 1-5; 16-2).

I reviewed all of the Plaintiffs' supporting documentation to make my findings and recommendations.

a. <u>Unpaid Contributions</u>

Plaintiffs assert that the Defendant owes contributions in the amount of $13,416.28 and $241.08 for the NEBF and NEAP Funds, respectively. (ECF Nos. 1, 16-2). I find that Plaintiffs' damages request is supported by exhibits and an affidavit from Brian Killian, a Contribution Compliance Manager. (ECF No. 16-2, pp. 1-4, 50-52). Mr. Killian reviewed the trust agreements, collective bargaining agreements, and Letters of Assent, and, in accordance with them, calculated the total amount of contributions owed for each month to each fund by reviewing the reports submitted by the Defendant. (ECF No. 16-2, pp. 1-4). I also credit Plaintiffs' spreadsheets, which provides a monthly breakdown of the contributions owed to the Benefit Funds. (ECF No. 16-2, pp. 50-52). The Defendant has not refuted Plaintiffs' evidence because it failed to file a responsive pleading. Thus, I recommend an award to the Plaintiffs for unpaid contributions in the amounts of $13,416.28 and $241.08 for the NEBF and NEAP Funds.

b. <u>Accrued Interest on Unpaid Contributions</u>

Plaintiffs claim the amounts of $767.50 and $23.03 in accrued interest for the NEBF and NEAP Funds, respectively. (ECF Nos. 1, 16-2). The ability to assess interest on late contributions is found in 29 U.S.C. § 1132(g)(2)(C)(i), which states that "interest on unpaid contributions shall be determined by using the rate provided under the plan." The trust agreements Benefits Funds establish guidelines for computing interest on late contributions. Interest will be assessed at the rate of 10% per annum through the date the pleading was filed "plus an award of interest accruing from the [date the pleading was filed] until contributions are paid in full." (ECF Nos. 1, 16-2). Here, there is undisputed evidence that the Defendant's unpaid contributions are delinquent. Therefore, Plaintiffs are entitled to interest assessed on the unpaid total. Accordingly, I recommend that the Court award Plaintiffs accrued interest in the amounts of $767.50 and $23.03,

plus any further accrued interest consistent with the Benefits Funds' guidelines for computing interest on unpaid contributions upon date of payment. *See* 29 U.S.C. § 1132(g)(2)(E) ("the court shall award such other legal or equitable relief as [it] deems appropriate").

### c. Liquidated Damages

Plaintiffs request liquidated damages in the amounts of $2,683.25 and $48.22 for the NEBF and NEAP Funds, respectively. (ECF Nos. 1, 16-2).

Under ERISA, a prevailing party shall be entitled to liquidated damages, provided that this amount is greater than the accrued interest on the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C). If liquidated damages are awarded, then such sum is limited to an amount not in "excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)" of the total amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

Here, for the NEBF, the record reflects that Plaintiffs are seeking $2,683.25 in liquidated damages versus $767.50 in accrued interest. For the NEAP, the record reflects that Plaintiffs are seeking $48.22 in liquidated damages versus $23.03 in accrued interest. When the value of liquidated damages is greater than accrued interest, the court is required to award liquidated damages. However, in accordance with the statute, the court must also determine whether the sum of the liquidated damages is in excess of 20 percent. According to the trust agreements, liquidated damages can be imposed when the payments are not made on time, and are not more than 20% of the contributions due and owing. (ECF Nos 1, 16-2). Here, I find that Defendant's contributions are delinquent, which permit Plaintiffs to impose a penalty of 20% of all money that is due. (*Id.*). I compared the total amount of liquidated damages assessed to the total amount of unpaid contributions. I find that the requested amounts of liquidated damages do not exceed what is

permitted by statute. Thus, I recommend an award liquidated damages to the Plaintiffs in the amounts of $2,683.25 and $48.22 for the NEBF and NEAP Funds.

In sum, because Plaintiffs' damages sought are unrefuted, the Court will grant Plaintiffs' request for unpaid contributions, liquidated damages, as well as accrued interest on the unpaid contributions, as permitted. Consequently, I recommend that the Court award damages to the Plaintiffs in the amount of $18,797.54 for the NEBF Fund, and $1,753.75 for the NEAP Fund, plus any further accrued interest on unpaid contributions upon date of payment.

### d. Attorney's Fees and Court Costs

The statute, 29 U.S.C. § 1132(g)(2)(D), mandates that a district court award "reasonable attorney's fees and costs of the action," where, as here, the requesting party prevails. In determining an award of attorney's fees, the "lodestar" approach, which is examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the most appropriate method for the Court to utilize. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Ideal Insulation, Inc.*, 2011 WL 5151067, at *6; *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Professional Painting Inc.*, Civ. No. WDQ-11-172, 2011 WL 3744123, at *7 (D. Md Aug. 23, 2011); *see also Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal citations omitted).

A plaintiff "must show that the number of hours for which he [or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, Civ. No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008); *see* Appendix B of this district's "Local Rules, Rules and Guidelines for Determining

Attorneys' Fees in Certain Cases" ("Guidelines") provides, in pertinent part, that lawyers admitted to the bar for twenty years or more may reasonably bill $300-475/hour, and that paralegals may reasonably bill $95-150/hour. *See* Guidelines, at ¶ 3.e, f.

In this case, the Plaintiffs request payments in the amounts of $1,151.10 for attorneys' fees related to the NEBF, and $1,151.10 in attorneys' fees related to the NEAP. In support, Plaintiffs offer a declaration from Jennifer Bush Hawkins, Esq., a member at Potts-Dupre, Hawkins & Kramer, Chtd. (ECF No. 16-1). Ms. Hawkins, who has been a member of the Bar for more than twenty-five years, submits two charts. The NEBF chart reflects that she billed Plaintiffs for .8 hours of work at an hourly rate of $379.00, for a total fee of $303.20, and that Caroline Lippie, her paralegal, worked 6.1 hours at an hourly rate of $139.00 for a total fee of $847.90. (ECF No.16-1, pp. 2-3). The NEAP chart reflects that she billed Plaintiffs for .8 hours of work at an hourly rate of $379.00, for a total fee of $303.20, and that Caroline Lippie, her paralegal, worked 6.1 hours at an hourly rate of $139.00 for a total fee of $847.90. (ECF No.16-1, pp. 3-4). According to Ms. Hawkins, the hours generated relate to reviewing the case file and preparing the Complaint and default judgment motions. (ECF No. 16-1, pp. 2-4). Ms. Hawkins' hourly rate falls within the suggested range, as does that of her paralegal. *See* L.R., App'x B, at 3.e, f.[4] In addition, I find that a total of 6.9 hours is a reasonable amount of time expended for the work performed for NEAP, and 6.9 hours is a reasonable amount of time expended for the work performed for NEBF.

In addition, Plaintiffs seek court costs of $402.00 (court filing fee) and $156.25 (private process server fee) for total costs in the amount of $558.25, to be divided equally between both

---

[4] Counsel for Plaintiffs also submitted the "Adjusted Laffey Matrix" of prevailing rates for an attorney practicing in Washington, D.C. (ECF No. 16-1, pp. 7-8). I do not find this information persuasive, as Appendix B, although not binding, presumptively set forth ranges of reasonable hourly rates based on an attorney's years of experience. *Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

Benefit Funds. (ECF No. 16-1, p. 5). In support of the request, Plaintiffs provide an invoice from the process server. (ECF No. 16-1, p.10). I find that this type of cost is ordinarily charged to a client and is reasonable out-of-pocket expense. In addition, by statute, Plaintiffs are entitled to such court costs. *See* 29 U.S.C. § 1132(g)(2)(D).

Accordingly, I recommend that the Court award $2,302.20 in attorneys' fees and $558.25 in court costs related to the Benefit Funds.

### C. Payroll Reports

According to Mr. Killian, the Defendant has refused to submit monthly payroll reports for NEBF and NEAP for the period of December 2020 to the present. (ECF No. 16-2, p.3). Because of this, the Trustees have been unable to calculate some of the contribution amounts due and owing. The trust agreements, and the Letters of Assent related thereto, make clear that the Defendant is required to submit these monthly reports. (ECF No. 16-2, pp. 7, 24-31, 33-38, 40). Accordingly, I recommend that the court order the Defendant to file the payroll reports due in January 2021 through the present, and the corresponding contributions for the Benefit Funds.

### III.  CONCLUSION

In sum, I respectfully recommend that the Court, **GRANT** Plaintiffs' "Motion for Default Judgment" against the Defendant (ECF No. 16). To that end, I recommend that Defendants be required to file payroll reports for the period of January 2021 to the present. I further recommend that the district court enter judgment in favor of the Plaintiffs in the following amounts:

**NEBF**

(a) Unpaid contributions in the amount of $13,416.28;

(b) Interest in the amount of $767.50 plus interest accrued upon the date of payment;

(c) Liquidated damages in the amount of $2,683.25;

(d) Attorneys' fees of $1,151.10; and

(e) Court costs in the amount of $279.13.

**NEAP**

(a) Unpaid contributions in the amount of $241.08;

(b) Interest in the amount of $23.03 plus interest accrued upon the date of payment;

(c) Liquidated damages in the amount of $48.22;

(d) Attorneys' fees of $1,151.10; and

(e) Court costs in the amount of $279.13.

Dated: February 16, 2022                                 _____/s/_____
                                                                                       The Honorable Gina L. Simms
                                                                                       United States Magistrate Judge